UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nickey Joe Duprest,

Petitioner,

v.

Warden M. Rios,

Respondent.

Civ. No. 19-1782 (ECT/BRT)

**REPORT AND RECOMMENDATION**

Nickey Joe Duprest, Reg. No. 18086-040, Federal Prison Camp, Duluth, *pro se* Petitioner.

Ana H. Voss, Esq., and Andrew Tweeten, Esq., United States Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Petitioner Nickey Joe Duprest's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. No. 1, Pet.) Therein, Petitioner alleges that he was denied due process and given an illegally harsh sentence when he was disciplined by prison authorities for possessing a cellular phone. Respondent submitted a Response on August 22, 2019, and Petitioner filed his Reply on September 9, 2019. (Doc. Nos. 5, 8.) For the reasons that follow, this Court recommends the Petition for a Writ of Habeas Corpus be denied.

## I.  Background

Petitioner is presently serving a 132-month term of imprisonment followed by five years of supervised release for Conspiracy to Possess With Intent to Distribute and Distribution of five kilograms or More of Cocaine and an Unspecified Quantity of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(D), and 846, and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(a)(1), (c), and (h). (Doc. No. 6, Ingram Decl. ¶ 3.) Petitioner is incarcerated at the Federal Prison Camp in Duluth, MN ("FPC-Duluth"), and has a projected release date of June 2, 2025, pursuant to a good conduct time release. (*Id.*)

The events underlying the Petition began on November 23, 2018, at approximately 5:57 p.m., when an officer was conducting rounds, walked by Petitioner's room, and noticed that Petitioner had a cellular phone in his hand. (Doc. No. 6-4, Incident Rep. 1.) Petitioner saw the officer, and tried to put the phone away in a locker. (*Id.*) The officer then entered Petitioner's room and asked him to surrender the phone; Petitioner retrieved the phone from the locker and handed it to the officer. (*Id.*) The phone was a white Samsung with the IMEI tag removed and a T-Mobile SIM card. (*Id.*)

The officer confiscated the phone, took it to the Lieutenant's Office, and reported these events in Incident Report #3195263, dated November 24, 2018. (*Id.*) That incident report charged Petitioner with a violation of Code 108, Possession, Manufacture, Introduction or Loss of Hazardous Tool (Cell Phone); a copy of the Incident Report was delivered to Petitioner. (*Id.*; Ingram Decl. ¶ 9.)

On November 27, 2018, the Unit Discipline Committee ("UDC") held an initial hearing on Incident Report #3195263. (Ingram Decl. ¶ 11.) At that hearing, Petitioner had no comment as to the charge he was facing. (*Id.*) The UDC referred the matter to Tawana Ingram, the Disciplinary Hearing Officer ("DHO") in this matter. (*Id.*) The UDC also advised Petitioner of his rights with regard to a DHO hearing and provided him the opportunity to request a staff representative and witnesses. (*Id.*) Petitioner did not request either. (*Id.*)

On December 13, 2018, the DHO conducted a hearing on Incident Report 3195263, and subsequently issued a written report dated December 21, 2018. (*Id.* at ¶ 12; Doc. No. 6-7, DHO Rep.) At that hearing, Petitioner admitted that he was guilty of possessing the cellular phone. (DHO Rep. 1.) The DHO did not consider any documentary evidence outside the Incident Report and the supporting documentation and investigation. (Ingram Decl. ¶ 12; DHO Rep. 1–2.) Based on that information, the DHO concluded that Petitioner had violated Code 108, Possession, Manufacture, Introduction or Loss of a Hazardous Tool (Cell Phone), and sanctioned Petitioner with: (1) disallowance of 41 days of good-conduct time; (2) forfeiture of 162 days of non-vested good-conduct time; (3) loss of both phone and e-mail privileges for 180 days; and (4) 90 days' impound of personal property. (DHO Rep. 2.)

## II. Jurisdiction and Venue

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas corpus petition is the appropriate vehicle for challenging a

refusal to restore good-conduct time where restoration would shorten the prisoner's sentence. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002) ("[T]he Court held in *Preiser* that habeas corpus . . . is the exclusive federal remedy when a . . . prisoner seeks restoration of good time credits taken away by a prison disciplinary proceeding."). Venue is appropriate because Petitioner is confined in this judicial district. *See Perkins v. Jett*, Civil No. 14-3426 (ADM/JSM), 2014 WL 5090057, at *1 (D. Minn. Oct. 9, 2014).

### III. Analysis

Petitioner argues that he is entitled to habeas relief because he was denied due process and subjected to excessive disciplinary measures in violation of Bureau of Prison ("BOP") policy after being found guilty of possessing a cellular phone. (Pet. 2–3, 6–8; Doc. No. 8, Reply 2–4.) Petitioner also asserts that the discipline he received was an excessive fine in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. (Reply 3–4.) Respondent argues that Petitioner was afforded due process in his disciplinary hearing, and that his punishment was consonant with BOP regulations. (*See* Response.) This Court agrees with Respondent.

#### A.  BOP's Disciplinary Program

The BOP has established guidelines for the imposition of discipline on inmates. 28 C.F.R. § 541.1. When BOP staff have reason to believe that an inmate committed a prohibited act, a staff member prepares an incident report describing the alleged violation of the disciplinary code and refers it for investigation. 28 C.F.R. § 541.5. (Ingram Decl. ¶ 3; Doc. No. 6-1, Inmate Discipline Program "IDP" 17–18.) The investigating officer

ordinarily provides the inmate with a copy of the incident report and investigates the matter. (*Id.*)

Upon completion of an investigation, a UDC holds an initial hearing, ordinarily within five work days after the incident report was issued. 28 C.F.R. § 541.7; (Ingram Decl. ¶ 4; IDP 23–24). If the UDC finds the inmate committed the prohibited act, it can impose sanctions or refer the incident report to the DHO. (Ingram Decl. ¶ 4; IDP 23.) If an inmate is charged with a "Greatest" or "High" severity act (Code 100 or 200 level charges), the UDC automatically refers the incident report to the DHO. (IDP 23.) If the UDC refers an incident report to the DHO, it provides the inmate with a copy of the UDC's decision and advises the inmates of his rights at a DHO hearing. 28 C.F.R. § 541.7; (Ingram Decl. ¶ 4; IDP 25). The DHO serves as an impartial hearing officer responsible for conducting institutional disciplinary hearings and imposing sanctions. 28 C.F.R. § 541.8; (Ingram Decl. ¶ 5; IDP 27, 33, 44–55). At a DHO hearing, an inmate is afforded the opportunity to have a staff representative, to make a statement, and to present witnesses and documentary evidence. 28 C.F.R. § 541.8; (Ingram Decl. ¶ 5; IDP 27–32). An inmate is provided a written copy of the DHO's final decision. 28 C.F.R. § 541.8; (Ingram Decl. ¶ 5; IDP 34).

### B.     Due Process

Depriving an inmate of good-time credit for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). Where a prison disciplinary hearing may result in the loss of good-time credit, due process demands that the inmate receive: "(1) advance written

5

notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence he relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)).

Here, Petitioner does not contest that these requirements were satisfied. Instead, in his Reply brief, Petitioner argues that he was constitutionally entitled to review BOP video surveillance evidence, citing *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019). (Reply 2.) In *Lennear*, the Fourth Circuit reversed the district court's conclusion that prison officials did not violate the petitioner's due process rights by failing to review "allegedly pertinent video surveillance evidence." 937 F.3d at 262. The Fourth Circuit concluded that "inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and present video surveillance evidence." *Id.*

The underlying incident report in *Lennear* concerned events that occurred as correctional officers were taking a count of inmates in a cell block. The officers asserted that the petitioner was disobedient and encouraged other inmates to become disruptive, but the petitioner claimed he was merely seeking permission to use the restroom. *Id.* at 263–65. The incident report and the DHO report were silent as to whether the petitioner requested video evidence, and the BOP's Regional Director rejected the administrative appeal because petitioner did not timely request such evidence. *Id.* at 265–66. The petitioner asserted, however, that he had requested video evidence throughout the disciplinary process. *Id.* at 267. The Fourth Circuit concluded that an inmate facing loss

6

of good-conduct time has a qualified right of access to both review such evidence himself and to have the DHO review it upon request, and that the district court erred by concluding that the petitioner did not make a timely request to review video evidence without holding an evidentiary hearing. *Id.* at 269–76.

Even assuming that such a qualified right to video evidence is consistent with controlling Supreme Court and Eighth Circuit precedent, this case is still distinguishable from *Lennear* for at least three reasons. First, there is no indication in the record that any video surveillance footage exists, so it is not possible for this Court to determine, based on the record before it, that FPC-Duluth officials refused to consider it. Second, whereas the petitioner in *Lennear* presented a factual dispute about the timeliness of his request for video evidence, there is nothing in the record here to indicate that Petitioner ever made a request for video evidence. Indeed, Petitioner merely asserts that such evidence was not presented to him.[1] (Reply 2.) Finally, in *Lennear*, the nature of the incident that led to the petitioner's discipline made video evidence especially valuable to that petitioner's ability to mount an effective defense. Here, however, it is unclear how video surveillance footage of the seizure of the cellular phone would have helped Petitioner in light of his admission that he was guilty of possessing it.

For these reasons, the Court concludes that Petitioner received constitutionally adequate procedural safeguards prior to the imposition of discipline.

---

[1]  This Court observes that the BOP's procedures provide that "[i]f the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence." (IDP 19.)

### C. Petitioner's Discipline

A Code 108 prohibited act is defined by the BOP as:

> Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, ***portable telephone***, pager, or other electronic device).

(IDP 44 (emphasis added).) *See also* 28 C.F.R. § 541.3, Table 1. "The BOP's interpretation of its own regulation prohibiting possession of a hazardous tool is controlling unless it is plainly erroneous or inconsistent with the regulation." *Ramos v. Fisher*, Civ. No. 13-1059 ADM/HB, 2014 WL 5206716, at *10 (D. Minn. Oct. 14, 2014).

The IDP categorizes prohibited acts according to varying levels of severity, and it categorizes a Code 108 violation under the heading of "greatest severity," and prescribes appropriate sanctions. (IDP 9, 12–16, 44–46.) The sanctions for a Code 108 violation therefore include, *inter alia*, disallowance of up to 41 days of good-conduct time, forfeiture of up to 100% of an inmate's non-vested good-conduct time, impounding of personal property, and loss of telephone and e-mail privileges. (*Id.* at 45–46.)

Here, The DHO found Petitioner guilty of the Code 108 charged offense and sanctioned him with the loss of: (1) 41 days of good-conduct time, (2) 162 days non-vested good conduct time, (3) telephone and email privileges for 180 days, and (4) impoundment of personal property for 90 days. (Ingram Decl. ¶ 14; DHO Rep. 2.) These sanctions are within the scope allowed by the BOP's policy concerning inmate discipline for "greatest severity" level prohibited acts. (Ingram Decl. ¶ 15; IDP 45–46.)

8

The DHO enjoys discretion to impose disciplinary sanctions, and the Court will uphold those sanctions unless the exercise of the DHO's discretion was arbitrary or unreasonable. *See Glouser v. Parratt*, 605 F.2d 419, 420–21 (8th Cir. 1979); *Hewlett v. Warden, FMC Rochester*, No. 18-CV-2293 (WMW/LIB), 2019 WL 3557628, at *5 (D. Minn. Apr. 30, 2019), *report and recommendation adopted sub nom.*, *Hewlett v. Warden*, No. 18-CV-2293 (WMW/LIB), 2019 WL 3553411 (D. Minn. Aug. 5, 2019), *appeal dismissed*, No. 19-3234, 2020 WL 1862383 (8th Cir. Jan. 2, 2020). Accordingly, this Court concludes that the sanctions imposed by Petitioner were not excessive.[2]

### D.  Eighth Amendment Claim

In his Reply, Petitioner asserts that the loss of good conduct time is a violation of the Eighth Amendment's prohibition on cruel and unusual punishments and excessive fines. (Reply 3–4.) This argument is without merit. Courts have previously rejected Eighth Amendment claims when the disallowance of good conduct time and non-vested good conduct time falls "within the range of acceptable punishments outlined by the applicable regulations." *See Maldonado-Maldonado v. Cole*, No. 019CV02402JRTKMM, 2019 WL 7756102, at *6 (D. Minn. Dec. 13, 2019), *report and*

---

[2]  To the extent that Petitioner is alleging an equal protection claim based on the allegedly disparate treatment of other inmates, that claim also fails. "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). If he is similarly situated to other inmates who are treated differently, the second step requires the plaintiff to show that the reason for the disparate treatment is "intentional or purposeful discrimination." *Id.* at 733. On this record, this Court concludes that Petitioner has failed to assert a viable equal protection claim.

*recommendation adopted*, No. CV 19-2402 (JRT/KMM), 2020 WL 420008 (D. Minn. Jan. 27, 2020) (citing cases). Here, as discussed above, the sanctions imposed on Petitioner were within the limitations imposed by BOP regulations. Moreover, a disciplinary sanction forfeiting an inmate's good-conduct time is not a "fine" within the meaning of the Eighth Amendment's prohibition against excessive fines. *Id.* (citing *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)).

In sum, this Court concludes that Petitioner's loss of good-time credit did not amount to an excessive fine or cruel and unusual punishment, and therefore his Eighth Amendment claim fails.

### III. Conclusion

For the foregoing reasons, this Court recommends that the Petition for a Writ of Habeas Corpus be denied.

### RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED**.


Date: June 8, 2020

                                          *s/ Becky R. Thorson*
                                          BECKY R. THORSON
                                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).